IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MAYRA AMARO,               §
    Plaintiff,             §
                           §
v.                         §          CIVIL ACTION NO. H-09-0477
                           §
HSMTX/STALLONES-TOMBALL,   §
LLC d/b/a TOMBALL RETIREMENT §
CENTER,                    §
    Defendant.             §

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary
Judgment ("Motion") [Doc. # 21] filed by Defendant HSMTX/Stallones-Tomball,
LLC d/b/a Tomball Retirement Center ("TRC"), to which Plaintiff Mayra Amaro filed
a Response [Doc. # 25], Defendant filed a Reply [Doc. # 28], and Plaintiff filed a Sur-
Reply [Doc. # 30].[1]   Having reviewed the record and applied governing legal
authorities, the Court **grants** the Motion.

## I.    BACKGROUND

The material facts in this case are largely undisputed.  TRC is a retirement
community in Tomball, Texas, providing both "independent living" and "assisted

---

[1]    Also pending is Defendant's Objection to Plaintiff's Affidavit [Doc. # 29], to which
Plaintiff filed a Response [Doc. # 31].  The Court has not based its decision on any
inadmissible evidence and, as a result, Defendant's Objection is denied as moot.

living" opportunities.  Plaintiff first worked at TRC from June 2001 to November 2003 while in high school.  She resigned to care for her grandmother, but was rehired in March 2005.

Plaintiff worked as a nurse's aide in the assisted living department.  Suzie Tarnowski, Plaintiff's direct supervisor, was the Director of Nursing.  Nancy Milberger was the Director of the TRC facility.

Employees at the TRC were required to have annual tuberculosis ("TB") screening.  During the summer of 2006, Tarnowski asked all TRC employees to come to her office to verify that they had completed the TB screening.  As of early July 2006, Plaintiff had not completed the TB screening.

Linda Harris is a non-employee who coordinated private sitting jobs for the independent living section of the TRC.  In the summer of 2006, Harris wanted to contact Plaintiff, who had expressed an interest in private sitting assignments, so she asked Tarnowski for Plaintiff's phone number.  Tarnowski gave Harris the phone number, but advised Harris that she had been attempting unsuccessfully to contact Plaintiff for about a week.  Tarnowski asked that, if Harris spoke with Plaintiff, she tell her that she (Plaintiff) needed to get her chest x-ray.  Plaintiff complained to Milberger about Tarnowski telling Harris that Plaintiff needed to have a chest x-ray.

On July 23, 2006, Plaintiff and co-worker Chrystine Hood left the facility during their shift without clocking out in violation of a written TRC policy.  Sandra Steele, a resident's family member, reported to Tarnowski that she had been unable to locate Hood and, eventually, encountered her and another employee (who turned out to be Plaintiff) returning to the facility.  Hood was in charge of caring for Steele's family member, who had dementia, and Steele was quite upset that Hood had been away from the facility.  Hood and Plaintiff were both terminated for leaving the facility without clocking out in violation of the TRC policy.[2]

After her termination, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming that TRC had violated the Americans with Disabilities Act ("ADA").  In mid-September 2006, after she filed the EEOC charge, Plaintiff returned to the TRC facility with a recently-discharged TRC employee who did not speak English and wanted Plaintiff to interpret for him.  Plaintiff alleges that she was told that she was not welcome at the facility because she had filed an EEOC charge.

Plaintiff filed this lawsuit in Texas state court on May 15, 2008, alleging disability discrimination under Texas law, retaliation for complaining of disability

---

[2]     Plaintiff was also "written up" for gossiping and for working overtime without permission.  Defendant asserts that these reprimands were not a basis for its decision to terminate Plaintiff's employment, and Plaintiff has no evidence to the contrary.

discrimination, and invasion of privacy.  On January 19, 2009, Plaintiff filed a First Amended Petition in state court, changing her disability and retaliation claims to proceed under the ADA rather than under Texas law, and adding a claim under the Fair Labor Standards Act ("FLSA").  Defendant filed a timely Notice of Removal on February 18, 2009.  After a full opportunity for the parties to complete discovery, Defendant moved for summary judgment.  The Motion has been fully briefed and is ripe for decision.

## II.    STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

Case 4:09-cv-00477   Document 34   Filed in TXSD on 03/11/10   Page 5 of 18

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit &*

P:\ORDERS\11-2009\0477MSJ.wpd    100311.1609

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported

statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000). Similarly, a party may not defeat a motion for summary judgment "using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)); *accord Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).

## III.   ANALYSIS

### A.   ADA Claim

The ADA, 42 U.S.C. § 12112(d)(4)(A), allows an employer to require a medical examination if it is "job-related and consistent with business necessity." *Fuzy v. S&B Eng'rs & Constructors, Ltd.*, 332 F.3d 301, 303 (5th Cir. 2003).  The employer is required to treat any information obtained through the medical examination as confidential.  *See Ballard v. Healthsouth Corp.*, 147 F. Supp. 2d 529, 534 (N.D. Tex. 2001); 29 C.F.R. § 1630.14.

In this case, there is no dispute that the only disclosure by Tarnowski to Harris was that Plaintiff needed to have a chest x-ray.  It is also undisputed that Tarnowski did not directly disclose to Harris any information "obtained through the medical examination."

Plaintiff argues that the standard procedure at TRC and elsewhere is to obtain TB screening first through a skin test and, if that test is positive, to follow-up with a chest x-ray.  Therefore, Plaintiff argues, Tarnowski's statement to Harris that Plaintiff needed to have a chest x-ray revealed to Harris that Plaintiff had a positive skin test when she was previously employed at TRC while in high school.[3]  Plaintiff's argument fails to support a violation of the ADA.

The uncontroverted evidence in the record establishes that Tarnowski did not know that Plaintiff had a false positive skin test for TB during high school.  The uncontroverted evidence also establishes that, although TB screening generally begins with the skin test, employees may opt to have a chest x-ray instead of the skin test if, for example, they have a phobia regarding needles.  Moreover, there is no evidence that Tarnowski told Harris that the chest x-ray was in connection with TRC's requirement that its employees obtain annual TB screening.

Tarnowski's statement to Harris that Plaintiff needed to schedule a chest x-ray did not disclose information obtained from a medical examination required by TRC. There is no evidence that Harris interpreted Tarnowski's statement as disclosing, as Plaintiff suggests, that Plaintiff had a positive TB skin test several years earlier.

---

[3]      It is undisputed that Plaintiff does not have tuberculosis, has never had TB, and has never had a chest x-ray that indicated she has TB.

Moreover, Plaintiff has cited no case law that supports her argument that the ADA prohibits otherwise permissible disclosures that may – or may not – be misinterpreted. As a result, Defendant is entitled to summary judgment on Plaintiff's ADA claim.

Even if Plaintiff presented evidence that raised a genuine issue of material fact regarding whether Tarnowski disclosed to Harris information obtained through a medical examination, Defendant is entitled to summary judgment on Plaintiff's ADA claim because there is no evidence that Plaintiff suffered a cognizable injury caused by the disclosure. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 561 (5th Cir. 1998) (requiring some cognizable injury in fact proximately caused by the § 12112(d) violation).

Plaintiff asserts that she did not receive any private sitting assignments from Harris and assumes it was because of Tarnowski's disclosure that Plaintiff needed to schedule a chest x-ray. The uncontroverted evidence, however, establishes that Harris had already filled the private sitting job by the time Plaintiff returned her phone call. *See* Affidavit of Linda Harris, Exh. B to Motion, ¶ 9. Harris states in her affidavit that Tarnowski's comment "did not stop me from attempting to place Ms. Amaro [or from] using Ms. Amaro in the future." *Id.*, ¶ 10.

Plaintiff has failed to present evidence that raises a genuine issue of material fact regarding any cognizable injury caused by Tarnowski's disclosure.  On this basis, also, Defendant is entitled to summary judgment on the ADA claim.

### B.   Retaliation Claim

Plaintiff alleges that she was discharged in retaliation for engaging in activity protected by the ADA.  To establish a *prima facie* case of retaliation under the ADA, Plaintiff must demonstrate that: (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there exists a causal link between the protected activity and the adverse employment action.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *St. John v. Sirius Solutions, LLLP*, 299 F. App'x 308, 309 (5th Cir. Nov. 5, 2008).

An employee engages in protected activity by opposing any act or practice made unlawful by the ADA only if the employee had a "reasonable belief that the employer was engaged in unlawful employment practices."  *St. John*, 229 F. App'x at 309.  Additionally, the activity about which the plaintiff complained must have been actionable under the ADA.  *See Harvey v. Chevron U.S.A., Inc.*, 961 F. Supp. 1017, 1033 (S.D. Tex. 1997) (holding that complaining about a supervisor's favoritism toward a "paramour" did not constitute protected activity under Title VII)  (citing

*Sarff v. Continental Express*, 894 F. Supp. 1076, 1082 (S.D. Tex. 1995), *aff'd* 85 F.3d 624 (5th Cir. 1996)).

Here, Plaintiff complained to Milberger only that Tarnowski had disclosed to Harris that she needed to have a chest x-ray. As is explained above, that undisputed disclosure does not constitute a violation of the ADA. Therefore, by complaining about the permissible disclosure, Plaintiff was not complaining about an activity protected by the ADA. For this reason, Plaintiff has failed to present evidence that she engaged in protected activity under the ADA.[4]  Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

---

[4]  In the Second Amended Complaint, Plaintiff alleges that she filed a charge with the EEOC and, afterward, she was told she was not welcome at the TRC facility. *See* Second Amended Complaint [Doc. # 17], ¶¶ 43-44. By the time Plaintiff filed the EEOC charge, her employment with TRC already had been terminated. Consequently, the discharge could not have been caused by the EEOC filing.

To the extent Plaintiff bases her ADA retaliation claim on the EEOC filing and the subsequent denial of access to the TRC facility, there is no evidence of an "adverse employment action." *See, e.g., Thompson v. Sanderson Farms, Inc.*, 2006 WL 2711497, 8 (S.D. Miss. Sept. 21, 2006) (holding that post-termination failure to provide a good reference did not constitute an "adverse employment action"); *see also Waters v. Home Depot U.S.A., Inc.*, 159 F. App'x 943, 944 (11th Cir. 2005) (to constitute an adverse employment action, post-termination conduct must have a "tangible adverse effect" on the terms and conditions of the plaintiff's current or prospective employment); *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 888 (7th Cir. 1996) (holding that "events subsequent to and unrelated to [plaintiff's] employment" are not actionable retaliation actions).

Even if Plaintiff had presented evidence that established a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-retaliatory reason for its decision to terminate Plaintiff's employment. Specifically, Defendant asserts that it discharged Plaintiff because she left the facility without checking out, which violated a written TRC policy. Plaintiff, therefore, must present evidence that TRC's explanation is a pretext for retaliation. *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008); *Grubic v. City of Waco*, 262 F. App'x 665, 667 (5th Cir. Jan. 30, 2008). The plaintiff must show that "but for" having engaged in protected activity, the adverse employment action would not have occurred. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (citing *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)).

It is undisputed that TRC had a policy that employees were not allowed to leave the facility during their shifts without clocking out, and that Plaintiff knew about the policy. The policy recognizes the importance in an assisted living facility of knowing at all times which employees are available to provide for the residents, particularly in case of an emergency. It is also undisputed that, on July 23, 2006, Plaintiff and co-worker Hood left the TRC facility without clocking out. It is also undisputed that Steele, the family member of a resident with dementia, reported Hood's absence to Tarnowski and reported that a second employee was with Hood. It is undisputed that

Plaintiff was that second employee.  Plaintiff has admitted that leaving the facility without clocking out violated the TRC policy.

Plaintiff argues that Defendant's explanation for its decision to terminate Plaintiff's employment was a pretext for retaliation because the policy was selectively enforced.  It is undisputed, however, that Hood – the employee with Plaintiff when she violated the TRC policy against leaving the facility without clocking out – was also terminated.  Plaintiff argues nonetheless that other employees violated the policy and were not discharged.

Although different treatment of similarly situated employees is a way to demonstrate retaliation, the plaintiff must show that the employer "gave preferential treatment to another employee under 'nearly identical' circumstances."  *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).  Plaintiff has not identified any TRC employees who were similarly situated (specifically, that their absence from the facility without clocking out was reported to Tarnowski) but were not discharged for violating TRC policy.  *See, e.g., Arrington*, 93 F. App'x at 599. Tarnowski testified that the instance involving Plaintiff and Hood was the only time it was reported to her that an employee left the facility without clocking out.  *See* Deposition of Suzie Tarnowski, Exh. D to Motion, pp. 26-27.  Plaintiff testified that she knew of no other employee whose similar absence was reported.  *See* Deposition

of Mayra Amaro, Exh. C to Motion, p. 77.  Yet Hood – the only TRC employee who
is truly similarly situated – was discharged also.

Plaintiff has failed to present evidence that she engaged in activity protected by
the ADA.  Even if Plaintiff presented such evidence, she has failed to present evidence
that raises a genuine issue of material fact regarding whether Defendant's explanation
for its decision to discharge Plaintiff was a pretext for retaliation and that "but for"
Plaintiff's protected activity, she would not have been discharged for violating the
TRC policy.  Defendant is entitled to summary judgment on Plaintiff's retaliation
claim.

### C.    FLSA Claim

Plaintiff alleges that "she would from time to time work more than forty hours
in a single week."  *See* Second Amended Complaint, ¶ 24.  Plaintiff alleges that she
was not paid for her overtime work.  *Id.*, ¶ 25.

The FLSA provides that "no employer shall employ any of his employees . . .
for a workweek longer than forty hours unless such employee receives compensation
for his employment in excess of the hours above specified at a rate not less than one
and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).
An employee bringing an FLSA action for unpaid overtime compensation "must first
demonstrate that she has performed work for which she alleges she was not

compensated." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005).   An employee meets this burden of proof by proving that she "in fact performed work" for which she did not receive overtime compensation and by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)).  "Evidence of hours worked need not be perfectly accurate as long as it provides a sufficient basis to calculate the number of hours worked by each employee." *Colindres v. QuietFlex Mfg.*, 427 F. Supp. 2d 737, 752-53 (S.D. Tex. 2006) (internal quotations omitted) (citing *Marshall v. Mammas Fried Chicken, Inc.,* 590 F.2d 598, 598 (5th Cir. 1979)).  If an employer's records are properly maintained and accurate, those records may be relied upon. *See Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir., Aug. 19, 2005).

Defendant in this case maintained time records based on its employees clocking in and out.  Those records show that Plaintiff worked more than forty hours in a standard workweek seven times while employed by TRC, and it is undisputed that she was paid overtime wages for those overtime hours.  Plaintiff testified that she often worked through her lunch break and she thinks there were five times that she worked approximately thirty minutes after she clocked out, but she could not identify any specific "dates or anything" when she worked more than forty hours in a standard

workweek.  *See* Amaro Depo. at 47-48.  Plaintiff's usual schedule was to work 32 hours per week.  Consequently, even if Plaintiff's recollection that she often worked through her 30-minute lunch break and that she worked after her shift on perhaps five occasions were adequate to satisfy her burden to prove that she worked the time she claims, Plaintiff has not presented evidence that she worked more than forty hours in a standard workweek.  Plaintiff has failed to satisfy her burden to present evidence of overtime hours that she worked and for which she was not properly paid.

Additionally, it is undisputed that Defendant had a policy prohibiting its employees from working overtime without permission, and Plaintiff admits that she was aware of the policy.  Although an employer who knows that an employee is working overtime cannot permit that employee to perform overtime work without paying overtime compensation, "if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Harvill*, 433 F.3d at 441 (citing *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)).  Plaintiff has not presented evidence that raises a genuine issue of material fact regarding whether TRC knew or reasonably should have known that Plaintiff often worked through her lunch break and worked less than an hour after her shift ended on perhaps five occasions during the approximately sixteen months of her

employment.  Indeed, Plaintiff admits in her affidavit that there were no superiors present when she worked past the end of her shift.  *See* Amaro Depo., ¶ 10.  Plaintiff does not contend that she advised or otherwise made TRC aware that she was working overtime hours.  Instead, Plaintiff argues that TRC should have been aware that she was working overtime because she was required to clock out if she left the facility for lunch, because TRC deducts the employee's lunch break and requires the employee to ask to have the lunch time replaced if they worked through it, and because TRC advises its employees that they are not permitted to work overtime unless there is an emergency and the overtime is approved.  *See* Response [Doc. # 25], p. 39.  It is unclear how TRC's policies against working overtime are evidence that TRC knew or should have known that its employees were violating that policy.  Plaintiff has not presented evidence to raise a fact dispute on the issue of TRC's knowledge of her claimed overtime work.

Plaintiff has not presented evidence to raise a genuine issue of material fact regarding whether she worked certain overtime hours for which she was not compensated correctly, or that TRC knew or should have known that she was working the overtime hours that she now claims.  As a result, Defendant is entitled to summary judgment on Plaintiff's FLSA claim.

## IV.    CONCLUSION AND ORDER

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of her ADA, retaliation, and FLSA claims.  Plaintiff does not object to the entry of summary judgment in Defendant's favor on the invasion of privacy claim. As a result, it is hereby

**ORDERED** that TRC's Motion for Summary Judgment [Doc. # 21] is **GRANTED**.  The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this **11th** day of **March, 2010**.

Nancy F. Atlas
United States District Judge